From:Mr. Kevin Williams,
Attn:aka-Kirby Stewart. No#.EF-1167
c/o.SCI-Chester
500 East 4th. Street
Chester, Pa 19013

November 15th, 2025

To:United States District CourtHouse
601 Market Street
Philadelphia, Pa 17601

Re: Filing Writ Of Habeas Corpus

Dear Sir/Ma'am;

      I am writing to you to file a Write of Habeas Corpus, And I do understand that being that this is not the first Writ of Habeas Corpus that I've filed within this Court. So I'm going to need you to send the cost for a copy of the record. And being that I do not want said record mailed to me here at the prison, I am requesting the cost for a "certified copy of the record," to be mailed to this Court or is it to be mailed to the Third Circuit Court of Appeals?

      Because I need permission to file a second successful Habeas petition. So please supply me with the cost for a certified copy of the record, and is there a filing fee? Also, please ["see-*two original copies of the Petitioner's Writ of Habeas Corpus, one copy of PCRA petition filed within the lower courts, and one copy of the Supreme Court of Pennsylvania's decision*."] If so, please let me know and/or please forward me a copy of (IFP) paperwork. Please feel free to to contact me at your earliest convenience.

CC:Dist. Atty's Office Lancaster Co.,

Very Respectfully Submitted,

/s/ *Kevin Williams*

From:Mr. Kevin Williams,
Attn:aka-Kirby Stewart. No#.EF-1167
c/o. Chester
500 East 4th. Street
Chester, Pa 19013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN WILLIAMS,             :    **Case No. _____**
         Petitioner.     :

                         :   **Supreme Ct. 74 MM 2025**

    v.                 :   **Superior Ct. 493 MDA 2024**

SUPT'. GINA CLARK. et.al.,    :   **Lancaster Ct. 4395-1999**
COMMONWEALTH OF PENNSYLVANIA,   :
LANCASTER COUNTY, PENNSYLVANIA,   :
& HON. JEFFREY A. CONRAD. JUDGE.,   :
        Respondent(s).     :



RECEIVED
NOV 17 2025

## 28 U.S.C. §2254 WRIT OF HABEAS CORPUS

**AND NOW,** comes Kevin Williams, <u>pro se</u>, Petitioner, to file this writ of habeas corpus,

to appeal from judgment order(s) of the court of common pleas, superior court, supreme court.

For the following reason(s):

### 1. STATEMENT OF JURISDICTION:

This Honorable Court has exclusive jurisdiction over matters involving a person in state

custody. Appealing a decision from the Supreme Court of Pennsylvania, Case No. 74 MM 2025;

and the Petitioner is awaiting a decision concerning Reconsideration/Reargument from that said

court.

## II. BRIEF HISTORY:

Pro se, Petitioner, Kevin Williams, filed a pro se PCRA petition based upon information received from L.P.I., Goldstein, Mr. Goldstein spoke to Commonwealth's witness "Michael Morrows," who testified at the Petitioner's trial to being present when the victim was shot and killed. Mr. Morrows, told Mr. Goldstein that he does not know the crime, he does not know the victim or the three defendant's that was convicted for allegedly committing the of criminal homicide.

The PCRA court denied the Petitioner relief by first citing Pa.R.Crim.P., 907; the Petitioner filed a counter and PCRA petition was still dismissed by the PCRA court. And the Petitioner filed for Reconsideration/Reargument, that was never answered by said court. The Petitioner filed an appeal within the Superior Court. The Superior Court denied relief. The Lower Court's misapplied the "***Reasonable Diligence Standard***," the Lower Court's erred in its application of the reasonable diligence prong of after-discovered-evidence test, in the court's opinion, the court concluded that the Petitioner failed to exercise reasonable diligence in obtaining the evidence at issue. However, this conclusion fails to properly account for the actual circumstances that prevented the discovery of this evidence before trial. Specific details about why the evidence could not have been discovered earlier, with reference to specific facts, circumstances, and relevant case law. The Pennsylvania Supreme Court in ***Bradley***, *Id.*, recognized that the reasonable diligence standard does not require prefect vigilance and punctilious care, but rather a showing that reasonable effort to discover the evidence were undertaking. See-***Commonwealth v. Bradley***, 261 A.3d at 391. The Petitioner's efforts to discover the evidence satisfy this standard because specific reasons why Petitioner's efforts were reasonably diligent.

## III. DISCUSSION:

In ***Brady v. Maryland***, 373 U.S. 83 (1963), and its progeny (the cases that built on it)

2

hold your due process right under the Fourteenth Amendment of U.S. Constitution are violated, and thus you are entitled to a new trial, when (1). favorable evidence, (2). was concealed or withheld by the prosecution, (3). that would have created a reasonable probability of a different outcome at trial. Deals/agreements/understandings with witnesses for the benefits in exchange for testimony; open cases, etc., See-*Kyles v. Whitley*, 514 U.S. 419 (1995); *U.S. v. Bagley*, 473 U.S. 67 (1985); *Giglio v. U.S.*, 405 U.S. 150 (1972).

In *Dennis v. Secy'.*, 834 F.3d 263 (3rd. Cir. 2016), based upon the U.S. Supreme Court precedent, no due diligence requirements and only if the government is aware defense has it. As the Lower Court's are attempting to cite in the Petitioner's case. That the Petitioner did not exercise *due diligence*; when the Petitioner exercised due diligence in discovering that the Commonwealth's witness has selective amnesia. The Commonwealth placed said witness on the witnesses stand, knowing that these witnesses were lying. See-*Napue v. Illinois*, 360 U.S. 264 (1959). Due process is violated when (1). a witness commits perjury, (i.e., lied on the stand) (2). the prosecution knew or should have known testimony was false, (3). the false testimony was not corrected, & (4). there is a reasonable likelihood that the prejry could have effected the judgment of the jury.

Its a known fact that the Lancaster Co, Dist. Atty's Office, withheld exculpatory evidence from the defense. Because every witness was asked during the Petitioner's trial, "*did they receive anything for their testimony here today*? They all said *no*, during trial." Three years later during the Petitioner's evidentiary hearing 4/29/03; the leading prosecuting officer-Det. Thomas A. Kiss, testified that the Commonwealth was not going to help these witnesses with their case(s) if the witnesses did not testify how the Commonwealth wanted them too. The Commonwealth's whole case    is    based    upon    undermining    the    truth    determining

process of seeking the truth. Because ADA-Hackman, did not step up saying that what the Commonwealth's witnesses just testified to was false... When there are facts that were unknown to the Petitioner/defense/court, the Petitioner brings these facts to the Court's through a PCRA petition. Now PCRA court has denied PCRA petition citing that these said facts were "***already known***," to the courts. The court's has to be stating false facts: (1). if a court knew that said victim had a ***gun*** on his person's when said victim was shot and killed, why would said court charge a defendant with first degree murder? (2). If a court knew that said victim was ***wanted for an attempted murder in another state***, why not make it known to the defense? (3). if said court's knew that said victim was a known and active member of the notorious street gang called the ***Bloods***, why not make it known to the defense? (4). If said court knew that said victim attempted to shoot and kill another active ***Blood*** gang member, who were actively ***searching for the victim***, why not make it known to the defense? (5). If said court knew that said victim told his babymother that some guys were actively searching for him long before the alleged ***robbery of the alleged crackhouse***, going back as far as 1998 summer, why not make it known to the defense?

### IV. ARGUMENT:

However, none of the above is newly discovered evidence and/or after discovered evidence. This argument that the "*due diligence*," requirement is not in the statute and that it vilates federal law, See-***Dennis***, *Id*., Under §9545(b)(1)(iii), unknown to the Petitioner facts, and exercised reasonable dilignece in obtaining (***Bennett***, 930 A.2d 1264 (Pa. 2007),); because diligence can account for constraints of incarceration (***Burton***, 158 A.3d 618 (Pa. 2019),). Under a newly held retroactive law §9545(b)(1)(iii), a Constitutional right was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania   and determined to apply retroactively.

If none of this information listed above was ever mentioned in a court of law, or on the reocrd of this case. Its not known to the court, so if it is not known to the court; its definitely not known to the Petitioner. And based upon the facts of this information not being known to a Commonwealth court of law, this Honorable Court must assume jurisdiction as a matter of law, *Sue Sponte*.

4. If trial counsel and PCRA counsel's failures to adequately create a record to support these due process claims are not addressed now, not only will the record be inadequate for Petitioner to prevail in state courts, he now will be precluded from receiving federal habeas review. On May 23, 2023, the United States Supreme Court issued its decision in ***Shinn v. Martinez***, _____ S.Ct. _____, 2022 WL. 1611786 (May 23, 2022), holding that federal courts reviewing habeas petitions alleging ineffective assistance of initial collateral counsel as cause to excuse a *default* would now be prohibited from considering any evidence outside of the record, effectly overruling ***Martinez v. Ryan***, 566 U.S. 1 (2012)(Permitting habeas petitioner's to present new evidence in federal court to support their claims that initial PCRA counsel's ineffective assistance in failing to identify a claim in state collateral proceeding constituted cause to excuse a *default*). As a result of *Shinn*, Petitioner's only opportuntiy to challenge PCRA counsel's ineffectiveness is by seeking this remand under the authority of ***Bradley***, if the Petitioner is prevented from raising these claims on remand now, *Shinn*prevents him from effectively pursuing them in federal habeas proceedings and PCRA counsel's alleged ineffective assistance will pass unreviewed. Such a result would deny Petitioner the protections of ***Brady, Dennis, Bagley, Giglio & Bradley***; as provided.

The Superior and Supreme Court's have viewed and held case(s) as precedent standing law in case(s) like ***Commonwealth v. Bonaccurso***, 425 Pa. Super. at 479;  where the court recognized

that there was a gun present on the scene of the crime and that the victim had said within his possession. "And being that the victim was already wanted for an attempted murder; was he going to attempt to kill and/or kill on the night in question, that the victim was shot and killed on?."

In *Commonwealth v. Thomas*, 2023 Pa. Super. Unpub. Lexis 26002023 Pa. Super. Unpub. Lexis 2600 No. 2555 EDA 2022, the issues before the court in this appeal are whether the PCRA court erred in dismissing Peitioner's PCRA petition on grounds that it was untimely and did not assert a meritorious claim for PCRA relief without holding an evidentiary hearing. A PCRA does not have absolute right to a hearing on his claims for relief. See-*Commonwealth v. Grayson*, 2019 Pa. Super 183, 212 A.3d 1047, 1054 (Pa. Super. 2019); *Commonwealth v. Wah*, 2012 Pa. Super. 54, 42 A.3d 335, 338 (Pa. Super. 2012). A PCRA court may properly dismiss a PCRA claim without a hearing if there is no genuine dispute with respect to the facts on which the claim is based and those facts preclude relief or if its clear from the record that the claim is patently without merit. Pa. R. Crim. P., 907; See-*Commonwealth v. D. Williams*, 202 Pa. Super. 12, 244 A.3d 1281,  The PCRA court, however, must hold a hearing where the defendant's PCRA claim(s) cannot be rejected without resolving disputed issues of material facts that have not been addressed at a prior evidentairy hearing in the case. Pa. R. Crim. P., 908(a)(2). The lower court's, court of common pleas, superior court and supreme court's never gave "Michael Morrows," recantation statement a second glance. When a recantation is made in a case that the prosecution said *is a capital case*; said recantation needs to be explored further than boilerplated dismissal.

The Pennsylvania Supreme Court has granted a new trial. In *Commonwealth v. Bulted*, *Supra*, a second trial would be likely to produce a different result. *Bulted*, *Id*., 443 Pa. at 429,

279 A.2d at 162., After- Discovered- Evidence justified a new trial when the after-discovered-evidence contradicted an "**aggravating circumstance**.," The after-discovered-evidence in this case is exculpatory, *Mont, Supra,* if *Bonaccurso* and *Savasano* testified at trial as they did at the PCRA hearing, it would be difficult for the Commonwealth to prove the premeditation and lack of provocation which a conviction for first degree would require. Thus, the after discovered evidence makes granting *Bonaccurso* a new trial proper. See-*Cooney, Supra, Bulted, Supra,* 42 *Pa. C.S.A. §9545(a)(2)(vi), Supra.,*

   In all of the many appeals filed by the Petitioner, the Petitioner has always raised "*actual innocence.*" The Petitioner not only raised *actual innocence,* but can also prove "*factual innocence.*" When this crime was committed the Petitioner was at home asleep, the Commonwealth used professional paid informant's to tie the Petitioner and two codefendant's to the crime. The eye-witness said it was only one person inside the vehicle, its three people incarcerated for a crime that one person actually committed. Professional paid informant's say whatever whose paying them to say; the law is suppose to be straightforward in this Commonwealth, however, in **Commonwealth v. Livengood**, 901 A.2d 566 (Pa. Super. 2006). In said case, West Virginia filed for a fugitive warrant against *Livengood*, stating that *Livengood* committed a crime within West Virginia and *fled* to Pennsylvania. *Livengood*, challenged the extradition in its infancy stages, and was successful in his challenge. Because *Livengood*, was not a fugitive from West Virginia. The Petitioner was not a fugitive from the State of Pennsylvania either. The Commonwealth created "*exigent circumstances*," to have the Petitioner arrested in the State of New York and extradited to the Commonwealth of Pennsylvania. The Commonwealth stated in its fugitive warrant/governor's requisition, that then Defendant *fled* the jurisdiction of the Commonwealth to avoid being arrested for the crime. That was a farce,   the

7

Petitioner was not present within the Commonwealth when this crime was committed. The Commonwealth has said time and time again, "***so what?, We lied in our extradition request***???..." That lie denied the Petitioner a fair and impartial extradition hearing. And the never ending **Brady violations**, denied the Petitioner of a 6th. Amendment right guaranteed by the United States Constitution. The right to a fair and impartial trial; the Commonwealth insisted that *Brady violations* was dealt with by the Hon. Lawrence F. Stengel, Judge, that aspect of *Brady* that was dealt with was only related to "***deals/favors***," offered by the Commonwealth to its witnesses that was never corrected by the prosecution during the Petitioner's trial. As "[a]ll of the Commonwealth's many witnesses testified to [n]ot receiving anything for their testimonies during the Petitioner's trail.

The information that the Petitioner has presented to the PCRA court's is newly discovered evidence and/or after discovered evidence. That was never heard by a court in this Commonwealth; its not within the record that the victim had a ***gun*** on his person's when he was shot and killed. Or that the victim was ***wanted for an attempted murder when he was shot and killed***. Or that the victim was an active member of the notorious ***Bloods*** street gang; nor did the police and/or prosecuting team disclose that the victim told his babymother that some ***guys were after him before the alleged robbery of the alleged crackhouse***; in the summer of 1998. All of the above raises an overwhelmingly amount of "***reasonable doubt***" that trial counsel never even attempted to raise in this case, reasonable doubt that was in counselor's face if he would read the files/records of the case.

a). Trial counsel Mark F. Walmer. Esq., knew of the deals/favors before trial, because trial counsel, a.d.a. Hackman and Hon. Stengel, Judge, had secret meetings within the judges chambers off the record. Counsel's line of questioning; "were you promised anything for your testimony here today?" [A]ll of the Commonwealth's many witnesses said [n]o; that was the end of that line of questioning. Its in the police reports that the victim was ***wanted for an attempted murder***; its in the police reports that the victim is an active ***Blood*** gang member; its in the police reports that the victim told his babymother that ***some guys were after him the summer of 1998***;

trial counsel did no formal investigation, went with what little discovery that the prosecution gave to him. Trial counsel told the Defendant during trial that the prosecution *offered a plea deal during trial*; trial counsel said that the Commonwealth has to prove a case against you, the only way that can happen is "if your two codefendant's say "We committed the crime and he told us to do it!" That did not happen like that because the Commonwealth's case is based upon "*circumstantial evidence & hear say*;"

b). PCRA counsel Janice M.L. Longer. Esq., did not know of the deals/favors, but they were brough to the court and PCRA counsel's attention via evidentiary hearing on 04/29/03, the information that was discovered at said evidentiary hearing: [N.T.E.H. 04/29/03] where Det. Thomas A. Kiss, who was at the prosecuting table throughout the entire trial to intimidate witnesses to testify. Testified that the Commonwealth was not going to help these witnesses with their case(s) *if* they didn't testify the way that pleased the Commonwealth, they were not going to help them with their case(s) which is literally an incentive to lie for the Commonwealth. Once counsel heard that deals/favors were offered and it was not part of the official record, counsel not the *prisoner should have stopped the proceedings*- the evidentiary hearing to amend her PCRA petition. That did not happen, the Lower Court's stated that the *Petitioner should have stopped the proceedings*- the evidentiary hearing. That did not happen. PCRA counsel waited for PCRA court to deny relief; PCRA counsel filed an appeal to Superior Court, it was denied. PCRA counsel filed an appeal to Supreme Court and once that court denied relief. PCRA counsel abandoned the Petitioner. The Petitioner filed a *Second PCRA petition*, said PCRA petition was denied as "time-barred," "How can there be a (time bar) when the Petitioner was in litigation for the whole 5-years?" The then Defendant was never even formally arraigned on a first degree murder charge, as the charges came after a conviction was secured.

c). The Commonwealth allowed Det. Thomas A. Kiss, to sit at the prosecution table throughout the entire trial, to intimidate the Commonwealth's witnesses to testify how the Commonwealth wanted them too. [N.T.T. 3-9-00 until 3-29-00] trial counsel is telling witness Washief David or Davis, that he does not have to look at Det. Kiss, during his testimony. Det. Kiss, exercised psychological warfare on David or Davis, whose a juvenile, by holding him in cell at the police station, with no clothing, cold air blowing into the cell, didn't feed him and threatened to imprison him for life. As Det. Kiss, did to Alexis A. Paul, your going to prison for the rest of your life if you don't do what I say do; Det. Kiss, did the samething to Robert S. Woods, your going to prison for the rest of your life if you don't do what I say do; Darryl Coleman, who was getting sick from complications of having full blown AIDS wanted to get out of Lancaster County Prison of fears of dying inside, Det. Kiss, than you better do as I say do or your going to die in prison. Regina Butler, your going to prison for the rest of your life, you better do as I say do; Sharon Eaddy, welfare fraudster; every Commonwealth witness had charges pending and every witness who testified at trial, Det Kiss, wrote those statements and coerced said witnesses right before trial. And even visited said witnesses regularly at Lancaster County Prison until after trial. Det. Kiss, even drove Coleman to New York City, to visit his girlfriend and for Coleman to show Det. Kiss, Petitioner's mother inlaw house.

d). In every appeal that the Petitioner has filed, its always been the judge's who file opinions, briefs opposing relief. Every attorney that the Petitioner had has been ineffective, making the Petitioner a victim of layered ineffective assistance of counsel; the Commonwealth witness "*Michael Morrows*," does not know the victim, he does not know the crime, and does

not know the Defendant(s). So its a fair assessment to say that the victim had a **gun** on him when he was shot and killed. And his friend "**Michael Morrows**," took said **gun** off his friend's waistband. And told several people about this **gun**, but never mentioned it to the police; the samthing that happened in **Commonwealth v. Bonaccurso**, 425 at 479. The Commonwealth knows that the Petitioner is entitled to a new trial and/or *evidentiary hearing*. As in **Commonwealth v. Thomas**, 2023 Pa. Super. Unpub. Lexis 26002023; this case was not about "*Justice*" it was about showmanship and/or gamemenship; the d.a. wanted to be a judge so he overreached by illegally extraditing the Petitioner from the State of New York to the Commonwealth of Pennsylvania, and the Commonwealth still has not produced an original copy of their fugitive warrant/ extradition papers/ governor's requisition. To illegally charge the Petitioner for a crime that d.a. Madenspacher and Lancaster Co. Police knew in advance that the Petitioner did not commit.

e). The Commonwealth never even preformed a "*pre-sentence-investigation*" on the Petitioner. And its always been "*judge's*" filing opposing opinions, briefs and motions to deny the Petitioner a new trial. Knowing that the Petitioner did not have a fair trial to begin with; the prosecuting team never stepped up to say "*if it pleases the court, the testimony from all of those witnesses were false[...].*" Accordingly, if the prosecution team knows that a witness is making a false statement, the prosecution team is guilty of allowing perjured testimony to go uncorrected, which changed to outcome of the decision making process of the case. See-**Giglio v. United States**, 405 U.S. 150, 154 (1972); **Napue**, 360 U.S. at 269(due process violations occurs where the State "use[s] false evidence... to obtain a tainted conviction"). Thus, **Napue, violation(s)**.

f). Its three different version(s) of the Commonwealth's case: "***(1). The Defendant committed the crime of criminal homicide and*** *fled*; ***(2). The Defendant*** ***ordered*** ***his two codefendant's to commit the criminal homicide; (3). It was never alleged that the Defendant was*** ***present in Lancater Co.*** ***for the murder.*** In **Commonwealth v. Livengood**, 901 A.2d 566; the crime has to be a crime in the sending state. Its no **circumstantial evidence & hear say**, case(s); if the State of New York cannot prove murder beyond a reasonable doubt; its no **accomplice liability** case(s); its conspiracy no **accomplice liability**. In the State of New York, its no natural life, its always number(s) followed by a life term. The Petitioner would not have been arrested for this case within the State of New York, the New York authorities arrested the Petitioner for the Commonwealth of Pennsylvania because the Commonwealth created "*exigent circumstances*." To make the New York authorities think that the Petitioner committed a crime of criminal homicide. And the Court's have allowed the Commonwealth three manner's of the event.

---

Footnote:-------------------------------------------------------------------------------------------------------------------
The judge that was assigned to the Petitioner's case is Jeffrey A. Conrad. Judge, who also was assigned to a civil case filed by the Petitioner for ["Information and/or H-Files"] See-Case#23-01436, the Petitioner has wrote and wrote to said judge for over a year concerning this civil case. And has not received one response back; he just abandoned the case. So when the same judge was assigned to CP-36-CR-0004395-1999, Case#. 4395-1999; said judge made an adverse decision in 10-days, denying the Petitioner relief of a new trial and/or evidentiary hearing. Its known that said information such as ["recatation"] requires a evidentiary hearing.

In *McCracken*, 659 A.2d at 545 (where victim descriptions of preperator fit both defendant and other man and other man found in possession of murder weapon, "jury must have placed considerable weight on [only eyewitness's] testimony" to return second-degree murder conviction).

Second, the court's on the record statement that it "just couldn't get around the after discovered evidence that didn't exist at the time at the time to tell the jury," is based on faulty reasoning and adds an element to the well-established after-discovered-evidence test. It is true that there can be no "pattern and practice" of something that has not happened before. However, there must be a first time for everything, including police misconduct. This may well be the "first" documented case of a coerced confession by Det. Thomas A. Kiss, especially given that the nefarious investigations conducted by homicide officers in Lancaster County. Williams' conviction for a crime that he did not commit was neither an accident nor an isolated instance of police misconduct. Rather, [he], like so many other Black men in Lancaster County. The after-discovored-evidence in this case at bar deserves to be adjudged at a evidentiary hearing.

In 267 A.3d 531267 A.3d 531; 2021 Pa. Commw. Lexis 5752021 Pa. Commw. Lexis 575 No. 1295 C.D. 2019. **"Did the trial court err in dismissing the complaint on the grounds that *Brady* and *Giglio* authorized the district attorney and the c ity's actions?"** The trial court dismissed the complaint based on its conclusion that *Brady*, *Giglio* and Pa. R. Crim. P., 573(B) (1)(a)16 authorize the city to release the police officer's personal information to DA Krasner is authorized under *Brady* and *Giglio* to engage in all of the conduct alleged in the complaint. The trial court concluded that such action is fully within the discretion of DA Krasner as he is tasked with carrying out his responsibilities to fairly prosecute crimes and maintain the intergrity of the criminal justice system. {267 A.3d 544} at the outset, we agree with the trial court that DA

11

Krasner and the city have an obilagation to disclose all exculpatory information material to the exculpatory {267 A.3d 556} evidence, as well as evidence that could be used to impeach prosecution witnesses, whether that evidence is in possession of the Office of the District Attorney or the City itself, and must provide that evidence to the accused. Furthermore, the City has a derivative duty to assist the District Attorney with fulfilling his constitutional obligation to criminal defendants, by providing the District Attorney, at this request, with information regarding such allegations. *Kyles*, 514 U.S. at 437-39. The majority and I are thus in agreement that there is no legal basis for enjoining the City from providing requested information to the District Attorney, or enjoining the District Attorney form either establishing a so-called "Do Not Call List" or disclosing officer misconduct-related infromation to line prosecutors.

Any implication, promise or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility. *United States v. Giglio*, 405 U.S. 150, 154, 31 L. Ed. 2d 104, 92 S.Ct. 763 (1972). As *Brady* and its progeny dictate, when the failure of the prosecution to guilt or punishment of an accused, including of an impeachment nature. In *Brady* the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates [a defendant's Fourteenth Amendment] due process [rights] where the evidence is material either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. *Brady* material must be turned over regardless of whether the defense makes a request. *United States v. Agurs*, 427 U.S. 97, 111-12, 96 S.Ct. 2392, 49 L. Ed. 2d 342 (1976). The obligation extends to evidence in the possession of the entire prosecution team, "including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L. Ed. 2d 490 (1995)(imposing on a prosecutor the "duty to learn of any favorable evidence known to the others acting on the government's

behalf in the case, including the police") *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1142 (Pa. 2001)(holding that under *Kyles*, "the prosecution's *Brady* obligation clearly extends to exculpatory evidence in the files of the police agencies of the same government bringing the prosecution") *Brady* material also includes impeachment material, i.e., evidence of dishonest acts, bias, motive, and any other evidence tending to affect witness credibility. *Giglio*, 405 U.S. at 153-55; See-*Commonwealth v. Strong*, 563 Pa. 4555563 Pa. 455; 761 A.2d 1167761 A.2d 1167; 2000 Pa. Lexis 28362000 Pa. Lexis 2836 No. 250 Captial Appeal Docket.

Evidence can be material even if it "goes only to the credibility of the witness," *Napue*, 360 U.S., at 269; indeed, "[t]he jury's estimate of the truthfulness and reliability of a giving witness may well be determinative of guilt or innocence," *ibid*. Because Sneed's testimony was the only direct evidence of Glossip's guilt of capital murder, the jury's assessment of Sneed's credibility was necessarily determinative here. Besides Sneed, no other witness and no physical evidence established that Glossip orchestrated Van Treese's murder. Thus, the jury could convict Glossip only if it believed Sneed.

Had the prosecution corrected Sneed on the stand, his credibility plainly would have suffered. That correction would have revealed to the jury not just that Sneed was untrustworthy (as *amicus* points out, the jury already knew he repeatedly lied to the police), but also that Sneed was willing to lie to them under oath. Such a revelation would be significant in any case, and was especially so here where Sneed was already "nobody's idea of a strong witness." Brief for Court-Appointed *Amicus Curiae* 37. Even if Sneed's bipolar disorder were wholly irrelevant, as *amicus* argues, his willingness to lie about it to the jury was not. " 'A lie is a lie, no matter what the subject.' " *Napue*, 360 U.S., at 269 (quoting *People v. Savvides*, 1 N.Y. 2d 554, 557, 136 N.E. 2d 853, 854-855(1956),).

To establish a *Napue violation*, a Defendant must show that the prosecution knowingly solicited false testimony or knowingly allowed it "to go uncorrected when it appear[ed]." *Ibid*. If the Defendant makes that showing, a new trial is warranted so long as the false testimony "may have had an effect on the outcome of the trial," *id*., at 272- that is, if it "in any reasonable likelihood [could] have affected the judgment of the jury,' " *Giglio v. United States*, 405 U.S., 150, 154 (1972)(quoting *Napue*, 360 U.S., at 271). In effect, this materaility standard requires " ' "the beneficiary of the [the] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *United States v. Bagley*, 473 U.S. 667, 680 n. 9 (1985)(quoting *Chamman v. California*, 386 U.S. 18, 24 (1967),). Quoting *Glossip v. Oklahoma*, 604 U.S. _____, 2025; the Petitioner in this case has shown a pattern and practice that is practiced by the Lancaster County District Attorney's Office. That the prosecution is never going to hand over a full discovery and the prosecution is knowingly and willingly to allow false testimony to secure a conviction.

## RELIEF

*ORDER*, that the Petitioner be granted a new trial, thus, vacating the sentence of judgment. By viewing the above as it applies to the law and new retroactive case law of *Glossip v. Oklahoma*, as in the Petitioner's case there is no tie to the Petitioner besides *Circumstantial Evidence & Hear Say*; and without said circumstantial evidence & hear say. The Petitioner [would] not be incarcerated.

## CONCLUSION

*WHEREFORE,* the Petitioner prays that this Honorable Court views all of the above and come to the conclusion of the Petitioner did not receive a fair trial. And the prosecution violated *Napue, Brady, Bagley,* and any other case where false testimony and suppression of evidence that

14

should have been made known to all concerned parties was used for the sole purpose of obtaining

a conviction. If this Honorable Court, does not grant a new trial. In the alternative grant the

Petitioner an evidentiary hearing.


## CERTIFICATE OF SERVICE

**I,** Kevin Williams, pro se Petitioner do hereby and herein serve a true, correct and
original copy of the Petitioner's Writ of Habeas Corpus, on all of the paeties listed below by First
Class U.S. Mail, on this ___ᵗ S___ , date of November 2025.


To:United States District CourtHouse
601 market Street
Philadelphia, Pa 19601


ToLancaster County District Attorney's Office               Respectfully Submitted,
Lancaster County CourtHouse
50 North Duke Street
P.O. Box 83480
Lancaster, Pa 17608-3480                         /s/ _Kevin W Williams_

Date: _Nov 15, 2025_

From:Mr. Kevin Williams,
Attn:aka-Kirby Stewart. No#.EF-1167
c/o. SCI-Coal Township
1 Kelley Drive
Coal Township, Pa 17866



**ORIGINAL COPY**

**RECEIVED**
JAN 2 2 2024

## MOTION FOR POST CONVICTION RELIEF

COMMONWEALTH OF PENNSYLVANIA    :
                             :     **Case No. 4395-1999**
          V.                :
                             :
KEVIN WILLIAMS,             :
          Defendant.        :

## DEFENDANT'S PETITION PURSUANT TO POST CONVICTION RELIEF ACT

**AND NOW**, comes Kevin Williams, Pro Se, Petitioner to move this Honorable Court

with the Petitioner's Motion for Post Conviction Relief Act, as follow(s):

1. CP-36-CR-0004395-1999, Lancaster County, Pennsylvania,

2. First Degree Murder,

3. Kevin Williams,

4. State Correctional Institution-@Coal Township,

5. March 29, 2000, Life W/Out the Poss. of Parole, March 29, 2000; Lawrence F. Stengel.

Judge.,

6. Trail by Judge without the Jury,

7. I am Serving a Sentence,

8. I am Eligible for Relief because of:

(IV). **The Improper Obstruction of Government Officials of the Petitioner's Right of**

**Appeal where a Meritorious Appealable Issue Existed and was Properly Preserved**

1

(c). The Petitioner never knew that the victim and Robert Pittman, committed a number of robberies before the alleged robbery of the alleged crackhouse that the Petitioner allegedly maintained, on 01/18/1999;

(d). Its a clear Brady violation to withhold any information concerning a criminal case;

(e). If trial counsel knew the above, that makes him ineffective;

12. The Commonwealth knowingly withheld the facts of this case, by not fully disclosing what Pittman and Morrows, told investigators on the scene of the crime;

13. A "private investigator" spoke to Michael Morrows, who said that he's not Micheal Morrows, and that he does not know the anything about the case or the crime. He does not know the victim, and he does not know the Petitioner or codefendant's. So how can Michael Morrows, testify to facts that were not true, and the Commonwealth never corrected it;

14. The Petitioner asserts that "Michael Morrows" took a gun off the victim's waistband, after he was shot and killed. And other suspects had motive to kill the victim as well;

15. The Petitioner will present evidence at the evidentiary hearing;

16. The Petitioner has taken every measure to secure relief;

17. The Petitioner has filed in every court, PCRA petition(s), Habeas Corpus petition(s); state courts, federal courts and U.S. Supreme Court;

18. Every filing/petition has been denied;

19. Robert C. Wee. Esq., and trial Mark F. Walmer. Esq.,

20. The error(s) has not been waived: Other Relief (Specify): Vacate the Sectence of Judgment, before having an evidentiary hearing; and/or new trial;

21. The Commonwealth will produce unknown and known information of name(s) listed above, and addresses, date's of birth;

3

22. The Petitioner request that the Commonwealth produce, all of Det. Kiss's notes, Lancaster Co. Prison Logbook from November 1998 until April or May 1999, which would tell how many times Det. Kiss visited, and who he visited, any GSR test reports done on the vehicle, all of the deals that the Commonwealth made with its witness(s), victim's baby mother statement to police, arrest warrant from the the State of New York for the attempted murder charge and NYPD statements and reports on the victim;

23.  Consider the following: Appellant prosecution challenged an order from the Court of Common Pleas of Philadelphia County (Pennsylvania), which granted a new trial to criminal appellant following his conviction of first-degree murder, because new exculpatory evidence was discovered from a witness who had previously been unavailable. OVERVIEW: Appellant was charged with murder after a victim was shot to death in front of his car repair shop. Appellant's trial counsel pursued a defense of misidentification. Appellant was convicted of first-degree murder. Post-trial motions were filed and denied. Appellant retained another counsel who took the case to federal court on habeas corpus petition, which was also unsuccessful. Appellant then requested relief under the Post Conviction Relief Act, *42 Pa. Cons. Stat. §9543*. A judge found merit in Appellant's contentions and granted him a new trial. On appeal, the court found that a witness had been unavailable, because the witness left the scene and lied to the police about what he had seen. The court states that Appellant's and witness's version of events, if believed, painted a picture of third degree murder, not first degree murder. The after-discovered evidence was exculpatory and would likely have effected the outcome of the trial. Further, it would be difficult for Appellant to prove the premeditation and lack of provocation which a conviction for first degree murder would require. The order was affirmed. OUTCOME: The order granting a new trial to criminal Appellant after he was convicted for first degree murder was affirmed, because exculpatory evidence was presented by a witness which could have affected the outcome of Appellant's trial. See-***Commonwealth v. Bonaccurso***, 425 Pa. Super. 479425 Pa. Super. 479; 625 A.2d 1197625 A.2d 1197; 1993 Pa. Super. Lexis 12911993 Pa. Super. Lexis 1291;

4

24. Requesting that the court appoint attorney at law: Steven C. Feinstein. Esq., 2633 E. Allegheny Ave. Philadelphia, Pa 19132; and private investigator: Jeffrey Goldstein. LPI., 801 Willopenn Drive. Apt#.N-201, Southampton, Pa 18966;

## UNSWORN DECLARATION

I, Kevin Williams, Pro Se, Petitioner, do hereby and herein certify that the facts set forth in the above motion are true and correct. To the best of my personal knowledge or information and belief, and that any false statements herein are made subjected to the penalties of Section 4909 of the Crimes Code (*18 Pa. C.S. §4909*), related to unsworn falsifications to Authorities.

To:Lancaster County CourtHouse
Office of the Clerk of Courts
50 North Duke Street
P.O. Box 83480
Lancaster, Pa 17608-3480

Cc:

Very Respectfully Submitted,

/s/ Kevin Williams

Date: Dec 23sd. , 2023.

5

Jeffrey S. Goldstein, LPI
801 Willopenn Drive,
Apt. N-201
Southampton, PA 18966
(215) 431-1158
jeffrey.goldstein3@verizon.net

---

December 23, 2023

## AFFIDAVIT OF INVESTIGATIVE SERVICES

I, Jeffrey S. Goldstein, am a Licensed Private Detective in the Commonwealth of Pennsylvania, Bucks County, license number 137. I had been retained by Kirby Stewart(Kevin Williams) with regard to locating and attempting to secure an Affidavit from a Michael Morrow located in the Lancaster County, PA. Upon receiving this investigation I performed various searches through public record and pay databases to locate Michael Morrow. After extensive research I found Michael C, Morrow, DOB, 3/5/82, at 190 Valley Road in Conestoga, PA 17516. There were a couple of phone numbers listed for him that were no good.

On Monday, November 13, 2023, I traveled to the address of 190 Valley Road in Conestoga, PA 17516, in order to speak with Michael Morrow about this matter and ask him the questions that were provided to me. Upon arriving there I found nobody at home so I left a business card asking Mr. Morrow to contact me.

On Thursday, November 16, 2023, I received a phone call from Michael Morrow from 223-221-0641. He asked me why I had stopped by his house and I explained it to him. Upon asking if he knew about this matter he stated to me had no knowledge and hung up.

I, Jeffrey S. Goldstein, verify that the statements in this affidavit are true and correct. I further verify that I am an adult over the age of 18 and not related to any party in this action. I understand that this unsworn document contains statements that are made subject to the penalties of 18 P.C.S. 4904 relating to unsworn falsifications to authorities.

12/23/23

From: Mickey Sewell

NO# EF-1127

C/O.SCI-Chester

500 East 4th·Street

Chester, Pa 19013.



FIRST-CLASS

US POSTAGE — PITNEY BOWES

ZIP 19013
02.7W
0008037116 NOV 14 2025
$ 003.28⁰

TO: The United States
District Court House
601 Market Street
Philadelphia, Pa 19601

XRAY
USMS

Legal Mail: